UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Case No. 11-1583 (RJL) |
| OFFICE OF SCIENCE AND TECHNOLOGY POLICY, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION
(July 2̶0̶ 2012) [## 8,9]

Plaintiff Public Employees for Environmental Responsibility ("PEER") brings this

action against the Office of Science and Technology Policy ("OSTP") for failure to

disclose information pursuant to the Freedom of Information Act ("FOIA"). Plaintiff

seeks material consisting of certain communications relating to the cultivation of

genetically-modified crops on national wildlife refuges and certain records relating to an

inter-agency working group on agricultural biotechnology. Before this Court are the

parties' cross-motions for summary judgment. After due consideration of the parties'

pleadings, the relevant law, and the entire record herein, defendant's motion is

GRANTED and plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff PEER is a non-profit organization "dedicated to research and public

1

education concerning the activities and operations of the federal government." Compl. ¶ 5 (Dkt. # 1). Defendant OSTP is a federal agency tasked with advising the Executive Branch on effective use of science and technology in national and international affairs. Leonard Decl. ¶ 2 [Dkt. # 8-1]; *see also* 42 U.S.C. § 6614(a) (2006). This action concerns two FOIA requests filed by PEER on OSTP.

First, on April 18, 2011, PEER requested OSTP produce its communications concerning the cultivation of genetically engineered or modified crops on national wildlife refuges. Leonard Decl., Ex. 1-A.[1] In OSTP's May 13 response to this request, identified as FOIA Request 11-18, the agency produced certain responsive records but withheld portions of the records under FOIA Exemptions 4, 5, 6. Leonard Decl. ¶ 6; *see also* 5 U.S.C. § 552(b)(4), (b)(5), and (b)(6). Plaintiff appealed this production as a constructive and partial denial on June 10, 2011, and OSTP denied that appeal on June 27, 2011. Leonard Decl. ¶ 10.

On June 13, 2011, PEER submitted its second FOIA request to PEER, seeking information concerning the Agricultural Biotech Working Group (the "Working Group"), an interagency collaboration, convened by OSTP, which focused on the sharing of

---

[1]    Specifically, in Request 11-18, PEER requested "(1) all communications to and from outside (non-federal) entities, including corporations, or individuals concerning cultivation of GE crops on national wildlife refuges; and (2) all communications to and from other federal agencies, including the U.S. Fish and Wildlife Serve and the Department of Interior, concerning cultivation of GE crops on national wildlife refuges." Leonard Decl., Ex. 1-A.

agricultural biotechnology information among federal agencies.  Leonard Decl. ¶¶ 3, 12.[2]

On July 11, 2011, OSTP acknowledged receipt of this second request, identified as FOIA

Request No. 11-32, and stated that it would release records on a rolling basis after

consultation with other federal agencies. *Id.* ¶ 13. Subsequently, PEER appealed that

response as a constructive denial.  Leonard Decl. ¶ 15.  Then, on August 15, 2011, OSTP

produced ninety pages of documents in response to 11-32, withholding certain

information on the basis of FOIA Exemptions 2, 5, and 6.  *Id.* ¶ 16; *see also* Leonard

Decl., Ex. 1-C.[3]

On September 1, 2011, plaintiff initiated this action, alleging that OSTP had failed

to adequately respond to FOIA Requests 11-18 and 11-32 and that OSTP had unlawfully

withheld portions of records responsive to Request 11-18.  *See generally* Compl.

Subsequently, the parties were able to narrow their disputed issues.  Def.'s Mot. 3.  On

January 20, 2012, defendant moved for summary judgment, contending that it had

adequately searched its records and produced all non-exempt, responsive documents.

---

[2]    Specifically, in Request 11-32, PEER requested "(1) all documents, including communications, which reflect the mission, nature and/or scope of activities of the Ag. Biotech Working Group or any similarly named organization in which OSTP is a member or otherwise involved; (2) all communications that OSTP has had with industry or industry representative organizations, such as the Biotechnology Industry Organization (BIO), from January 1, 2010 to present concerning the Ag. Biotech Working Group or any similarly named organization; and (3) records reflecting any other industry-promotion or partnership arrangements in which OSTP is currently participating." Leonard Decl., Ex. 1-B.

[3]    PEER states that it did not receive any documents in response to Request No. 11-32 until the Assistant United States Attorney assigned to this case produced ninety pages of documents with the defendant's answer to the complaint.  Pl.'s Mot. 3, n.1.  However, PEER is not challenging this allegedly delayed response.

Def.'s Mot. 1 [Dkt. # 8].  On February 17, 2012, plaintiff filed its cross-motion for

summary judgment, challenging:  (1) the adequacy of OSTP's *Vaughn* index, (2) OSTP's

basis for withholding of certain information pursuant to FOIA Exemptions 4 and 5, and

(3) the adequacy of OSTP's segregation and production of non-exempt information.  Pl.'s

Mot. 1, 4 [Dkt. # 9].[4]  Plaintiff contends it is entitled to summary judgment because

OSTP has not met its obligations to show that withheld information is exempt from FOIA

and to disclose non-exempt, segregable information.  *Id.* at 4.  For the following reasons,

I disagree with the plaintiff and GRANT summary judgment in favor of defendant.

## ANALYSIS

### I.    *Summary Judgment Standard*

"When assessing a motion for summary judgment under FOIA, the Court shall

determine the matter *de novo.*" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598

F. Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)).  Summary judgment is

appropriate when the record demonstrates that there is no genuine issue of material fact in

dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  The moving party bears the burden, and the court will draw "all justifiable

inferences" in the favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  Nevertheless, the non-moving party "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that

---

[4]     Plaintiff has abandoned its initial challenge to the adequacy of OSTP's search in
response to Request 11-32.  Pl.'s Mot. 3, n.3.  Accordingly, OSTP is entitled to summary
judgment on that issue. *See Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009).

there is a genuine issue for trial." *Id.* at 248 (internal quotations omitted). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits its own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA action, an agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search, which, in the absence of contrary evidence, are sufficient to demonstrate an agency's compliance with FOIA. *See Perry v. Block*, 684 F.2d 121, 126-27 (D.C. Cir. 1982) (per curiam).

Further, with respect to an agency's non-disclosure decisions, the court may rely on affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation omitted). "Ultimately, an agency's justification

for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (internal quotations omitted).

## II.   Adequacy of Vaughn Index

PEER's challenge to the sufficiency of the document descriptions in OSTP's *Vaughn* index is without merit. *See* Pl.'s Mot. 6-9. "[W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply,' " *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir.1987) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir.1977)). Although only providing the "briefest of references to its subject matter . . . will not do," *Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987), "agenc[ies] are not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).   At bottom, the "measure of a *Vaughn* index is its descriptive accuracy." *King*, 830 F.2d at 225.

Plaintiff claims that OSTP's *Vaughn* index contains "brief and conclusory language" and "fails to explain how individual documents meet the essential elements of the exemptions claimed." Pl.'s Mot. 7-8.  I disagree.  Upon review of OSTP's *Vaughn* index, Leonard Decl., Ex. 1-D., OSTP *Vaughn* index [Dkt. # 8-5], I conclude that the agency has provided the specific and detailed language necessary to meet its burden. *See*

6

*Johnson*, 310 F.3d at 774.  For each withheld document, OSTP provided thorough

information, including details about each document's sender, recipients, date and time,

and subject.  *See generally* OSTP *Vaughn* index.  OSTP has also specifically described

the redacted portions of the documents, explained how that information is exempted from

FOIA, and provided the relevant FOIA exemption for each piece of withheld information.

*See, e.g., id.* at 11-32.10 (describing redacted information as "set[ting] forth one official's

impressions of the goals and objectives of a future interagency meeting" and

"discuss[ing] consistency with U.S. government positions and approaches, timing and

predictability of specific systems, draft options for discussion, and other proposals for

priority issues and options" and asserting information is exempt under deliberative

process privilege); *see also* Leonard Decl. ¶¶ 30-33, 40-45.  Therefore, OSTP has

satisfied its burden to provide justification for why the withheld documents are exempt

from disclosure under FOIA.  *See Johnson*, 310 F.3d at 774 (describing methods for

agency to meet its burden).

### III.    FOIA Exemptions

Under our Circuit's law, "[i]f an agency's statements supporting exemption

contain reasonable specificity of detail as to demonstrate that the withheld information

logically falls within the claimed exemption and evidence in the record does not suggest

otherwise, . . . the court should not conduct a more detailed inquiry."  *Larson v. Dep't of

State*, 565 F.3d 857, 865 (D.C. Cir. 2009).  Here, plaintiff challenges the defendant's

reliance on FOIA Exemptions 4 and 5.  Plaintiff's arguments, however, are unpersuasive,

and it fails to put forth any evidence to refute the defendant's detailed explanations about these claimed exemptions.  Therefore, for the following reasons and based on the agency's *Vaughn* index, Leonard Declaration, and DiLenge Declaration, this Court finds that OSTP has sufficiently justified its use of these FOIA exemptions.

### A.  FOIA Exemption 4

PEER challenges OSTP's withholding under FOIA Exemption 4 of certain information in one e-mail communication, which was sent to OSTP by a third-party trade association, Biotechnology Information Organization ("BIO").  Pl.'s Mot. 19-27. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4) (2006).  Our Circuit has found that "the terms 'commercial' and 'financial' in the exemption should be given their ordinary meanings" and that the commercial information provision is not confined to only those records that reveal "basic commercial operations."  *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Here, OSTP withheld a portion of that e-mail from BIO, which contained information concerning BIO's "internal strategic discussions." Dilenge Decl. ¶¶ 5, 6, 8.  BIO's general counsel stated that BIO was not required to submit such information and only did so inadvertently.  *Id.*  ¶¶ 4-5.  Based upon the explanations OSTP has put forth, I conclude that OSTP has sufficiently justified its withholding of this information as confidential and commercial.

First, this information is commercial for purposes of Exemption 4 because "the

provider of the information has a commercial interest" in the information. *Baker &
Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). BIO's general
counsel has stated that the withheld information relates to "BIO's internal strategy for
accomplishing [its] advocacy mission." Dilenge Decl. ¶ 6; *see also Vaughn* index 11-
18.12 (identifying subject of document as "FWS EA on biotech crops in refuge areas"
and describing redacted portions as discussion of BIO's internal strategy). BIO certainly
has a commercial interest in its internal strategies. *See Gov't Accountability Project v.
Dep't of State*, 699 F. Supp. 2d 97, 102-03 (D.D.C. 2010) (finding that non-profit
foundation had commercial interest in report on discussion expanding to new
geographical area). Nevertheless, plaintiff argues that this information must be disclosed
because it would not "reveal commercial information generated by BIO's for profit
members." Pl.'s Mot. 21. But whether BIO's for-profit members generated the
information is irrelevant. The issue is whether BIO or its for-profit members have a
commercial interest in the information. *See Critical Mass Energy Project v. Nuclear
Regulatory Comm'n*, 830 F.2d 278, 281 (D.C. Cir. 1987), *rev'd on other grounds*, 975
F.2d 871 (D.C. Cir. 1992) (considering whether "commercial fortunes of [non-profit
organization's] member utilities . . . could be materially affected by the disclosure"); *see
also* Pl.'s Mot. 21 ("Whether the submitter of the information is a for-profit or a non-
profit entity is not dispositive as to whether the information qualifies as commercial.").
There is no doubt that both BIO and its members have a commercial interest in BIO's
advocacy strategy, which is at the core of BIO's competitive value to itself and its

9

members.[5]

OSTP also meets its obligation to show that this information was confidential.

Because BIO was not required to submit this information to OSTP (and, indeed, did so

only inadvertently, Dilenge Decl. ¶ 4), OSTP must show only that the information "is of

a kind that would customarily not be released to the public" to sufficiently prove

confidentiality. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d

871, 879 (D.C. Cir. 1992); *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 126

(D.D.C. 2006) (requiring declarations as to customary treatment). Through the Dilenge

Declaration, OSTP has done just that. Dilenge Decl. ¶ 5 (stating information "is of a kind

that BIO would not normally release to the public, OSTP, or any other outside party"), ¶

8 ("BIO does not normally provide information about our internal strategic discussions

with any third parties. . . ."). PEER does not offer any evidence to contradict this, and

only argues that PEER itself cannot determine whether the information is not of the kind

---

[5]    Plaintiff also argues that withholding "BIO's advocacy information as
'commercial' would subvert the purpose of Exemption 4." Pl.'s Mot. 24. Plaintiff is
raising a false alarm. First, PEER mischaracterizes the withheld information as advocacy
information, rather than BIO's internal strategy. *Id.* But PEER offers no plausible
explanation for this assertion. Then, PEER claims that withholding such information
"would allow non-profit organizations to serve as conduits through which commercial
entities could funnel their advocacy without fear that their tactics and the extent of their
influence will be disclosed to the public." *Id.* PEER relies on *New York Public Interest
Research Group v. EPA*, 249 F. Supp. 2d 327, 334 (S.D.N.Y. 2003), but that case is
distinguishable. *See* Pl.'s Mot. 22-24. In that case, certain analyses were submitted to
the EPA specifically for the purpose of "advocating a position to the EPA and clearly
intending to affect its decision." *N.Y. Pub. Interest Research Grp.*, 249F. Supp. 2d at
334. But BIO's strategy information was only submitted to OSTP by mistake and was
not intended to advocate the organization's position. Dilenge Decl. ¶ 4. There is simply
no risk that withholding such information would subvert this exemption.

that would customarily be publicly released.  Pl.'s Mot. 26-27.  But the standard for

assessing confidentiality is "how the particular party customarily treats the information"

and not how the plaintiff or other parties might view the information.  *Center for Auto*

*Safety v. National Highway Traffic Safety Admin.*, 244 F.3d 144, 148-49 (D.C. Cir. 2001).

Moreover, BIO's representation that the information concerns a "recommendation for

BIO's *internal* strategy" is sufficient to conclude that the information is confidential.

Dilenge Decl. ¶ 8 (emphasis added).  Having amply shown that this information is both

commercial and confidential, OSTP has properly asserted Exemption 4.

### B. FOIA Exemption 5

FOIA Exemption 5 excuses from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To qualify for this

exemption, a document "must fall within the ambit of a privilege against discovery under

judicial standards that would govern litigation against the agency that holds it."  *Dep't of*

*the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  One of those

privileges—the deliberative process privilege—exempts from disclosure documents

containing deliberations comprising part of a process by which governmental decisions

and policies are made so long as the documents are "predecisional."  *Klamath*, 532 U.S.

at 8; *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-54 (1975).  "[T]he ultimate

purpose of this long-recognized [deliberative process] privilege is to prevent injury to the

quality of agency decisions."  *Sears*, 421 U.S. at 151.  PEER has challenged OSTP's

assertion of this privilege to withhold certain information in response to FOIA Request

No. 11-32.  Pl.'s Mot. 4.[6]

In particular, OSTP asserted the deliberative process privilege to withhold

predecisional and deliberative information consisting of "draft interagency comments,

opinions and impressions of Executive Branch officials on draft documents, perceived

priorities and issues for discussion, proposed policies and processes for consideration,

and tentative concerns."  Leonard Decl. ¶¶ 41, 44.  For example, OSTP redacted certain

information, including  meeting agendas, that "proposed processes and policies for

consideration" by the Working Group, *see, e.g., Vaughn* index 11-32.16, 17, and

communications that reflected subordinate's impressions both of a proposed agency

actions and interagency discussions about this proposal, *see, e.g., Vaughn* index 11-32.30.

Additionally, OSTP withheld one "two-page draft document" that was "provided to the

Working Group for their consideration and input on the approach it proposed, and . . .

was not formally or informally adopted in its withheld form."  Leonard Decl. ¶ 42.

Finally, OSTP withheld some e-mail chains containing "draft text of weekly reports"

which were drafted to "apprise senior leadership of the status of deliberations and reflect

differing views, contemporary debate, and disagreement among Executive Branch

officials on topics that required further discussion by agency leadership."  *Id.* ¶ 43.

As made clear by the Leonard Declaration, all of this information is predecisional

---

[6]      Although PEER has challenged the information's predecisional and deliberative
status, PEER has not challenged OSTP's asserts that all withheld records remained within
the government's possession.  *See* Pl.'s Mot. 9-19; *see also* Leonard Decl. ¶ 40.

because it was either "provided to the Working Group for their consideration and input

on the approach it proposed" or was "subject to further editing . . . [and] in draft form, or

describe[d] tentative comments on draft submissions." *Id.* ¶¶ 43-44.  These proposals

and draft reports are predecisional and cannot be said to be "contemporaneous or after-

the-fact explanation[s]" of decisions.  *See Access Reports v. DOJ*, 926 F.2d 1192, 1194

(D.C. Cir. 1991).  For instance, the fact that the draft proposal was submitted to the

Working Group supports the conclusion that the document is predecisional because the

Working Group itself has no decision-making authority—only its member agencies make

final agency decisions.  *See* Pl.'s Mot. 17-18 (recognizing Working Group has no

decision-making authority); *see also Bureau of Nat'l Affairs, Inc. v. DOJ*, 742 F.2d 1484,

1497 (D.C. Cir. 1984) (finding that an agency's views submitted to a second agency with

final decision-making authority were predecisional).  And the draft weekly reports were

sent to "senior leadership" and reflect in part "topics that require further discussion by

agency leadership."  Leonard Decl. ¶ 43; *see also Tax Analysts v. IRS*, 97 F. Supp. 2d 13,

17 (D.D.C. 2000) (recognizing that view of drafts that lack ultimate authority are

necessarily predecisional).  OSTP has clearly satisfied its burden to show that this

material is predecisional.[7]

---

[7]      PEER contends that one document contains information "that explained a decision
already made." Pl.'s Mot. 12 (discussing document 11-32.13). But OSTP's *Vaughn*
index describes the redacted portions as "addressing comments received in the
interagency review process and specific differences between the draft and final versions
of the USDA/APHIS Environmental Impact Statement for Roundup Ready Alfalfa." *See*
*Vaughn* index at 11-32.13. As made clear by this description, this document, drafted by
an OSTP staffer, does not explain the USDA's decision; instead, it reflects the

Nevertheless, PEER argues that OSTP has not identified the specific decisions to which the withheld materials are related. Pl.'s Mot. 10-12. But the absence of such specific information is not fatal to OSTP's privilege claims, especially given the Working Group's advisory nature and the likelihood that it would deliberate and examine many proposals without arriving at specific decisions for each proposal. *See Access Reports*, 926 F.2d 1194, 1196; *see also Sears*, 421 U.S. at 151 n. 18.

OSTP has also met its burden to show that this information is deliberative. *See* Leonard Decl. ¶¶ 41-47 (describing documents withheld under Exemption 5 and stating those documents reflect "draft interagency comments, opinions and impressions of Executive Branch officials on draft documents, perceived priorities and issues for discussion, proposed policies and processes for consideration, and tentative concerns"). "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987). PEER argues that the withheld documents are not deliberative, but its arguments are based on mischaracterizations and unfounded assumptions. *See* Pl.'s Mot. 12-19. For instance, PEER assumes that certain agenda topics and a particular document's name could not be deliberative, *See* Pl.'s Mot. 13-14, but ignores the descriptions in the *Vaughn* index. The agency's *Vaughn* index explains

---

predecisional deliberations that remain protected even when recounted in a post-decision document. *Id.*; *see also Citizens for Responsibility and Ethics in Wash. v. DOJ*, 658 F. Supp. 2d 217, 233-34 (D.D.C. 2009).

14

that these agenda topics actually identify proposals and processes. *See, e.g., Vaughn* index at 11-32.16 (stating that redacted information discuses "proposals for discussion at the upcoming meeting of the Ag Biotech Working Group"); 11-32.21 (stating that redacted information "propose[s] agenda topics for discussion"). The index also explains that document's redacted title reveals the proposed processes and policies for consideration by the Working Group, discussed in the document itself. *Vaughn* index at 11-32.16. PEER attempts to characterize such information as "factual in nature" that must be disclosed. Pl.'s Mot. 16. But information about the deliberative process, that reveals what the agency is considering, should still be exempt from disclosure, even if it could be characterized as "facts." *Wolfe*, 839 F.2d at 774; *Edmonds Institute v. Dep't of Interior*, 460 F. Supp. 2d 63, 72 (D.D.C. 2006). PEER also relies on its assumptions about the redacted documents' content, arguing, for example, that one e-mail could not be deliberative because it must describe the "general role of the working group." Pl.'s Mot. 14. But the *Vaughn* index indicates that the redacted information discusses the timing and level of executive branch involvement for a decision as well as the Working Group's role as related to other policy issues under consideration. *Vaughn* index 11-32.15. Again, such information is properly considered deliberative because it would reveal the specifics of how the Working Group makes decisions on a particular issue.

Finally, PEER questions the Working Group's ability to employ the deliberative process privilege at all. To wit, PEER contends that since the Working Group "has no authority over these other agencies, it is hard to imagine how disclosing the topics would

15

stifle either the [Working Group's] or any other agency's decision making process." Pl.'s

Mot. 19. The defendant correctly points out, however, that non-decision-makers can take

part in the decision making process either by providing recommendations or by debating

at a lower level about what course of action to recommend. Def.'s Reply & Opp'n 23;

*see also Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 188

(1975) ("Congress plainly intended to permit one agency possessing decisional authority

to obtain written recommendations and advice from a separate agency not possession

such decisional authority. . . ."); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*,

566 F.2d 242, 257 (D.C. Cir. 1977) (recognizing that discussions about merits of different

positions are just as deliberative as the final recommendations). There is no doubt that, in

the Working Group's coordinating role "to share information related to the science,

technology, and regulation of agricultural biotechnologies with staff of relevant Federal

agencies," Leonard Decl. ¶ 3, it may certainly participate in the deliberative process.

Further, here, OSTP has affirmed that disclosure of any of the withheld

information could "have a chilling effect on future interagency discussions over

important and sensitive science and technology policy issues." Leonard Decl. ¶ 46. Such

a result could "hamper OSTP's ability to meet is core mission of coordinating science

and technology policy." *Id.* Therefore, defendant properly invoked Exemption 5 to

withhold this information in response to FOIA Request 11-32.

## IV.    *Segregability*

An agency claiming that a document is exempt under FOIA must, after excising

16

the exempted information, release any reasonably segregable information unless the non-exempt information is inextricably intertwined with the exempt information. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999).

Here, contrary to PEER's contentions, it is evident that OSTP released all reasonably segregable non-exempt material. As the Leonard Declaration adequately states, "OSTP conducted a careful, line-by-line review of each document withheld in full and in part to determine that there was no reasonably segregable factual or non-deliberative information responsive to plaintiff's request." Leonard Decl. ¶ 48; *see also, e.g., Vaughn* index 11-18.12 ("A careful, line-by-line review was done to determine that there is no reasonably segregable, non-exempt information responsive to Plaintiff's request within the redacted portions."). And, as mentioned, the *Vaughn* index describes in detail all of the redacted portions of the documents. *See generally Vaughn* index. PEER, however, has not identified any contrary evidence or cited any specific portions of potentially unsegregated documents.[8] Instead, PEER rehashes its previous arguments over the claimed exemptions and hypothesizes that the redacted information contains segregable factual information. *See* Pl.'s Mot. 28-33; *see also* Pl.'s Reply 24 (arguing OSTP has not met its burden to disclose segregable information because "OSTP failed . . . to justify the exemptions" and "many documents contain redactions of factual information"); *id.* ("As discussed above, OSTP's conclusory language does not allow the

---

[8]     PEER cites to over half of the documents withheld and claims that the redacted portions must contain factual information that could have been segregated out. *See* Pl.'s Mot. 32-33.

17

Court or Plaintiff to determine the validity of the redactions."). This is simply not enough to overcome the presumption of good faith afforded an agency's declarations. *Cf. SafeCard Servs.*, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith. . . ."). Even PEER recognizes that OSTP made efforts to disclose segregable information and treat different documents differently. Pl.'s Mot. 13, n. 6 (arguing that OSTP's reasoning for withholding some agenda items was faulty in part because it disclosed other agenda items). Therefore, OSTP has met its burden to release all reasonably segregable non-exempt material.

### CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment [#8] and DENIES plaintiff's cross-motion for summary judgment [#9]. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge